GRITT, JUDGE:
Claimant brought this action for personal injuries and vehicle damage sustained when he was traveling south on U.S. Route 220 in Grant County. U.S. Route 220 in Grant County is maintained by respondent. The Court is of the opinion to disallow this claim for the reasons more fully stated below.
The incident giving rise to this claim occurred on June 16, 1996, at approximately 5:00 p.m. On the day in question, the claimant was driving a 1984 Pontiac Fiero as he was traveling south on U.S. Route 220 at a speed of about forty to forty-five miles per hour. The posted speed limit is fifty-five miles per hour in this area. Claimant stated that he is very familiar with U.S. Route 220 and he has driven on this stretch of U.S. Route 220 for approximately twenty-three years. On the day of this incident, claimant had been to a friend’s house in Petersburg where the two of them worked on claimant’s automobile. Claimant arrived at his friend’s house between 12:30 -1:00 p.m. Claimant described this day as very hot and around 4:00 p.m. a thunderstorm passed through the area. Fie described rainfall as being more than an average amount and heavy. Claimant left his friend’s house to return to his home in Upper Tract, Pendleton County. At the time of the accident he recalls the roads being damp but he believes that it had stopped raining. He does not recall noticing water at this same area before the accident. Claimant testified that he was driving about forty-five miles per hour when he drove over a knoll on U.S. Route 220 and as he proceeded in the section of highway just beyond the knoll, his vehicle went into an area covered with water which caused him to lose control of his vehicle. He estimates that he traveled about thirty (30) to forty (40) feet prior to driving through the area of U.S. Route 220 covered with water. When his vehicle came onto the water, it began sliding in the road. He was able to maneuver his vehicle to the right side of the road to avoid oncoming traffic. He recalls that the front end of his vehicle dropped off onto the shoulder and “when the front end hit the shoulder it got traction and whipped the back end of the car around into the bank. When the car hit the bank, I felt the impact and my head hit the glass. At that point I don’t have any recollection of anymore of the accident other than whenever I woke up....” The impact *153 of the vehicle with the bank adjacent to the road caused claimant to hit his head and he lost consciousness. Claimant stated that he remembers first being aware of the accident when he realized his head was outside of the vehicle driver’s side window and he was laying on the pavement although he was still in his seat belt. When he fully regained consciousness, he got out of his vehicle. Approximately ten minutes later a friend and his girlfriend arrived at the scene and rendered assistance to him. Claimant realized that he had a severe cut to his head and he described his back pain as feeling like a “stoved finger.” He was transported to Grant Memorial Hospital where he was stabilized and then transported by helicopter to University of Virginia Hospital where he received stitches to close his head injury and was released from the hospital the next day.
Approximately two days after the incident described above, claimant returned to the scene of the accident where he observed water running down into the travel lane where his accident had occurred. The water appeared to cover the southbound lane which was the lane of travel in which the accident had occurred. He described the road as having a “sway” in it and he was driving in an upgrade portion on the road at the accident scene. Claimant described the water as being approximately one inch deep at this location at the time he observed the water some two days after the accident. Claimant proceeded to take a series of photographs which depict various points at the scene including a photograph of the culvert adjacent to this area which appears to be filled with debris. Water flows through this culvert beneath the road in the approximate area where claimant’s accident occurred. Claimant described the culvert as being approximately twelve inches in diameter. Another photograph depicts the ditch line adjacent to the road. One photograph depicts erosion apparently from the water flowing across U.S. Route 220 over top of the culvert rather than flowing through the culvert. Claimant opined that the culvert could not handle the amount of over flow and the water ran across the road and washed the grass and vegetation off this area. Claimant also testified that in his opinion there are two culverts that he believes caused water to flow onto the highway, the culvert described herein above and another culvert which is located beneath a driveway adjacent to the southbound lane of U.S. Route 220. Claimant testified that there is a blind spot where he could not see the water crossing the road and it appeared to him as though the road was clear. He described the water on the road surface on the date of the incident as three or four times as much water as on the date of his return visit to the scene. He stated that he was not aware of any water problems in this area of U.S. Route 220 prior to the date of his accident and there were no signs warning the public of water problems at this location.
Claimant suffered a back injury causing a compression to an area of the vertebrae in his back. His disability was calculated to be at forty percent. He has received physical therapy and rehabilitation therapy, but he still suffers from pain in that area of his back. He had twenty-two stitches to close his head wound. He stated that his insurance company declared his vehicle a total loss for which he did not have insurance coverage; however, he received $700.00 from the insurance company for the vehicle windows which were damaged in the accident. Claimant testified that his medical bills were paid by his automobile insurance. Although his vehicle is a 1984 Pontiac Fiero, he placed its value at $8,000.00 since he had just finished work to recondition it in 1995. The work to recondition his vehicle took him approximately three years.
A neighbor in the area of the accident scene, Joshua Paul Thorne, testified that he lives on U.S. Route 220 which is commonly referred to as the Franklin Pike. He testified that he has been driving for three to four years; that he is familiar with the area where the claimant herein had his accident; and that he has observed water running down *154 the road occasionally. He explained that when there is a heavy downpour water will run off a driveway adjacent to U.S. Route 220 and rather than flowing through the culvert, the water will flow over the top of the road and across the roadway along with dirt and debris. Mr. Thome also explained that one cannot see the water until coming right upon it because the driver is proceeding up a hill to a flat area and then the road surface dips right in front of his driveway. He stated that this water flows about 50 to75 feet. There are no warning signs posted for excess water and this condition has existed for the past three to four years. Mr. Thome stated that he only noticed this condition after the year 1996.
Claimant contends respondent knew or should have known that there was a drainage problem on U. S. Route 220 which created a hazardous condition to the traveling public and that respondent failed to provide proper warning to the traveling public of a known hazardous condition. It is claimant’s position that respondent’s failure to respond properly to this hazard constitutes negligence and that this negligence was the proximate cause of the claimant’s accident which resulted in physical injuries to him.
Respondent asserts that it did not have adequate notice that there was a drainage problem on U.S. Route 220 from its culvert or ditch line. Further, respondent asserts that it did not have knowledge that the driveway at issue in this claim posed any water problems on U.S. Route 220.
Edward Lee Rohrbaugh, a crew leader for respondent in Grant County, testified on behalf of respondent. Mr. Rohrbaugh stated that he has been responsible for maintaining this section of U.S. Route 220 since the early seventies. He described U.S. Route 220, Franklin Pike, as being a high priority road with double yellow lines in the middle and/or passing zones and white lines on the edges. Mr. Rohrbaugh testified that his crew used a baclchoe to remove the rocks and dirt from U.S. Route 220 on the day of the accident He testified that on the day of the accident water was coming off a driveway; however, prior to claimant’s accident his office had not received any notice or complaints about a problem on that portion of road and the date of the accident is the only time he recalls ever having a problem at this location. He was not sure how long the house and driveway have been at this location or if a permit was issued for the construction of this chiveway. According to Mr. Rohrbaugh, his office is responsibl e for maintaining the ditches along this route and his office had received no complaints regarding the ditch line needing to be cleaned. He explained that heavy rains could clog culverts.
Robert Allen Amtower, respondent’s Assistant District Engineer for Maintenance for District Five in the Eastern Panhandle, testified that he manages and oversees all of the maintenance activities within the district. Mr. Amtower is familiar with U.S. Route 220 in Grant County and described the road as being a two-lane bituminous paved highway. He stated that the average lane width is about eleven feet. The shoulder widths vary anywhere from two feet to ten feet depending on the section of roadway at issue. U.S. Route 220 in this particular area had been resurfaced in 1992. He stated that the culvert which runs underneath U.S. Route 220 is a fifteen-inch diameter corrugated metal pipe and he is unsure of when the culvert was last replaced although he could discern that it has been quite some time ago.
In his testimony Mr. Amtower stated that respondent’s policy for driveway entrance permits is consistent with W.Va. Code §17-16-6, which states that no one will have access to any highway right of way without a permit. He explained that if people have “unpermitted driveways,” respondent will eventually contact them and inform them that a permit is needed. With respect to maintenance, it is respondent’s policy that an *155 applicant or individual who has an entrance upon the highway is responsible for the construction and maintenance of that particular driveway. Mr. Amtower stated that the records in his district maintenance office were searched and there were no complaints found regarding this particular driveway or area on U.S. Route 220. He testified that although he has not spoken with the property owner he is aware that the entrance now has a swale across it such that it should be properly draining. In addition, he explained that his office maintains a listing of all complaints, particularly with driveways, and respondent notifies owners of any problems. There was no such record of any notification of the property owner found in regard to the driveway at issue in this claim. Mr. Amtower’s office was not able to determine whether this driveway was permitted; however, he explained that it may have been done under another name.
Mr. Amtower reviewed claimant’s photograph of what appears to depict the outlet end of the culvert on U.S. Route 220 and it did not appear to be obstructed. He also noticed that there was evidence of some overtopping or water overflow in this particular area. He explained that sometimes during heavy rainfall there are problems with debris getting into the culverts; however, if the culvert is not obstructed there should be full flow of the pipe. There are times when heavy rain produces more water than any culvert can cany.
Mr. Amtower testified that when problems are brought to respondent’s attenti on the procedure is to notify the proper people so that the problem can be resolved. Mr. Amtower stated that although they do not wait for the public to complain about a probl em, they generally rely on the public to report problems so that corrective acti on can be taken because they cannot physically be on eveiy road in every case. He testified that he did not know of this incident until sometime in the past year. In addition, he explained that if a particular problem is believed to involve private properties or issues beyond the scope of what the individual county can do then the district seeks engineering and technical assistance which will be provided to correct matters and make the necessary repairs.
Mr. Amtower examined the photograph which depicts the driveway and concluded that this design entrance does not look like one which would have been approved by respondent. However, the driveway may have been properly installed but may not have been maintained properly. County employees patrol the roads looking for potential problems; however, respondent does not have the staff to have employees driving on every highway every day to look for problems. If something is discovered by one of the employees, such employee is trained to report it to his or her county supervisor so that it can be corrected. After examining claimant’s photograph of the ditch line, Mr. Amtower concluded that the ditch line is adequate at that point in the road. He stated that there appears to be no water coming onto the roadway from the ditch line. Mr. Amtower used one of the photographs of the ditch line to demonstrate that the ditch line is higher in this area and that the water may not get to the ditch line. He also testified that it would take periods of moderate to heavy rainfall to cause any water problems on the roadway since the driveway culvert located there apparently was functioning with water flowing through it. The culvert located beneath the U.S. Route 220 is a fifteen-inch corrugated metal pipe which would carry the water as long as it was not obstructed. There has been a culvert at this location since the 1920's according to his research. He stated that if respondent’s crews came to the location of the accident on prior occasions to remove rocks and debris from the roadway and there was water running across the road then it should have been obvious to them that there was a problem. However, if there was no water in the area at the time that the crews were present, then there would not have been *156 any indication to them that there was a problem with the culvert system.
Deputy Lawrence Cornell, the investigating officer for claimant’s accident, worked for the Grant County Sheriffs Department in 1996 as a Senior Deputy. His duties includedpatrolling, investigation ofaccidents, andcompletingreports on accidents within the county. He investigated the accident which occurred on June 16, 1996, involving the claimant. When he arrived at the scene, he observed the vehicle on its top in the middle of the highway. He believes that it was still sprinkling rain at the time of this single car accident. He explained that when he arrived there was some gravel on the road and water coming across that was a “little milky.” Claimant was in the ambulance when the Deputy arrived at the scene. Deputy Cornell measured the width of the highway at twenty-two feet five inches. The eastern berm was measured at two feet five inches. The western berm measured at four feet six inches. The distance from the rear wheel of the vehicle to the edge of the roadway was four feet three inches and the distance from the wheel to the western side of the highway was eleven feet six inches.
The Deputy stated that there had been a heavy rain on the day of claimant’s accident and that it was cloudy. U.S. Route 220 at the scene was marked with double yellow lines and is on a grade. He described a dirt driveway adjacent to U.S. Route 220 from the side of the hill on the west side of the roadway and he stated that in a heavy rain muddy water and gravel comes down from the driveway and flows across the road. This is not a hidden driveway. He stated that there are drainage ditches on both sides of the road. He explained that the water came off of the side of the hill in the west and was traveling at an angle across the road and the angle would be more to the north than the south. There are no warning signs to alert the public about water on the road surface. He estimated that he found claimant’s vehicle to be approximately fifty to sixty yards at the most from the driveway.
Deputy Cornell concluded that when claimant was traveling south on U. S. Route 220, it was raining and water was running across the road. When claimant’s car went through the water, it started to hydroplane whereupon claimant lost control of his vehicle which then struck the embankment on the west side of U.S. Route 220 and overturned on roadway. Contributing circumstances in the police report was marked as failure to maintain control because in the Deputy’s opinion with the amount of rain coming down claimant was going too fast for these conditions. Although there was no proof of excessive speed, the Deputy stated that he should have slowed down for the rain. He did not cite the claimant for any driving offenses. Deputy Cornell also testified that while he has been with the Grant County Sheriffs Office, he has not investigated any other accidents before or after this one at this particular-location on U.S. Route 220. He didnot know of any complaints or calls from the public concerning this particular location on U.S. Route 220.
It is a well established principle of law that the State of West Virginia is neither an insurer nor a guarantor of the safety of motorists on its roads and highways. Adkins v. Sims, 46 S.E.2d 811 (W.Va.1947). To hold respondent liable for damages caused by inadequate drainage, claimant must prove by a preponderance of the evidence that respondent had actual or constructive notice of the existence of the inadequate drainage system and a reasonable amount of time to correct it. Ashworth v. Div. of Highways, 19 Ct. Cl. 189 (1993); Orsburn v. Div. of Highways, 18 Ct. Cl. 125 (1991).
In the present claim, the evidence adduced at the hearing indicates that respondent had no notice of the condition on U.S. Route 220 in Grant County. Respondent sent employees to the scene as soon as it received notice of the situation. The Court, while being sympathetic with the claimant and understanding the distress *157 caused to claimant in this situation, is of the opinion that respondent acted reasonably in response to notice of the debris on the roadway and that respondent was not negligent in its maintenance of the highway.
As to the driveway adjacent to U.S. Route 220 which claimant asserts caused the excessive water on the roadway surface, there was nothing to establish that respondent had actual or constructive notice that the driveway caused water problems on U.S. Route 220. Thus, the Court is of the opinion that respondent was not negligent in its maintenance of U.S. Route 220 based upon this element of claimant’s allegations.
In accordance with the findings of fact and conclusions of law as stated herein above, the Court is of the opinion to and does deny this claim
Claim disallowed.
The Honorable Benjamin Hays Webb, II, took part in the hearing of this claim, but he did not participate in the decision or opinion due to his untimely death.